UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CR-20110-GAYLES/GOODMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CLEMENTA JOHNSON,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT JOHNSON'S MOTION
TO DISMISS COUNT 16 OF THE SUPERSEDING INDICTMENT**

Charged by Superseding Indictment on five counts arising from a murder-for-hire

scheme, Defendant Clementa Johnson ("Johnson" or "Defendant") filed a Motion to

Dismiss Count 16. [ECF No. 90]. The United States filed a response [ECF No. 104].

Johnson did not file an optional reply (and the time in which to do so has expired).

At bottom, Johnson argues that Count 16 should be dismissed because he says that

murder-for-hire conspiracy, murder-for-hire, and stalking are not crimes of violence (and

therefore cannot serve as predicate offenses to the charged violation of 18 U.S.C. §

924(c)(1)(A) in Count 16). Defendant further argues that because he is not substantively

charged with travel in interstate or foreign commerce in aid of racketeering, in violation

of 18 U.S.C. § 1952(a)(2), then that offense also cannot serve as a predicate offense for Count 16.

But, as outlined below, the Undersigned concludes that stalking is in *fact* a crime of violence (a result which several other courts have adopted). Moreover, an individual can be convicted of 18 U.S.C. § 924(c) without being substantively charged or convicted for the underlying crime of violence or serious drug offense. Therefore, the Undersigned **respectfully recommends** that United States District Judge Darrin P. Gayles[1] **deny** Johnson's dismissal motion.

## Factual Background

The Superseding Indictment charges Johnson with five counts: (1) conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958 (Count 1); (2) a substantive count of murder for hire, in violation of 18 U.S.C. §§ 1958 and 2 (Count 13); (3) stalking, in violation of 18 U.S.C. §§ 2261(A)(2)(a) and 2 (Count 14); (4) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2 (Count 15); and (5) brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 16). Johnson's motion challenges only Count 16. [ECF No. 53].

The United States provided a detailed summary of the factual background underlying the motion in its Response [ECF No. 104, pp. 1–4], and this Report and

---

[1]     Judge Gayles referred the motion to me on April 8, 2025. [ECF No. 91].

Recommendations will outline the critical portions of that summary (though it does, at times, slightly revise the language to improve syntax, grammar, and style). Johnson has not challenged the United States' factual representations.

In 2022, law enforcement began investigating a series of events that were occurring to Victim 1 and her family members as Victim 1 separated from, and began divorce proceedings against, her husband, Sergio Pino ("Pino").

The investigation revealed that, beginning in 2022 and continuing until July 2024, Pino hired two groups of individuals to carry out arsons, assaults, and attempted murder against Victim 1 and her family members. Law enforcement learned that Pino hired Bayron Bennett ("Bennett") in 2022 to recruit individuals to commit arsons against Victim 1's sister, Victim 2, and her husband's vehicles on two separate occasions. Pino also had Bennett and the members of the first group surveil Victim 1 and attempt to prevent her from attending court proceedings by ramming her vehicle with a Home Depot rental truck.

When Bennett and the individuals from that first group were arrested in March 2024, Pino then solicited Fausto Villar ("Villar") to hire a group of individuals to surveil and kill Victim 1. To accomplish this, Villar worked with Avery Bivins ("Bivins"), who recruited Defendant to find the people who would kill Victim 1. Defendant then recruited Vernon Green ("Green"), Diori Barnard ("Barnard"), and another two individuals to carry out the murder contract.

Defendant and the others were provided with syringes that supposedly contained a drug that was to be injected into Victim 1 to make it look like she either died of heart failure or an overdose. To carry out their plan, Defendant and Barnard obtained a stolen truck and replaced its license plate with a stolen license plate. This truck was used by Green and another individual to follow Victim 1 and try to kill her. Defendant also used a rental car from Budget Rent-a-Car to conduct surveillance and follow Victim 1 so that they could kill her. Defendant was provided with Victim 1's address and other addresses that she might possibly visit. Defendant communicated with Bivens, Barnard, Green, and others using a cellphone.

The group followed Victim 1 for a number of days, looking for an opportunity to kill Victim 1 as she would travel to restaurants, shops, her house, and the houses of relatives and friends. The group even followed Victim 1 as she traveled to a Key Largo resort. Ultimately, the group gave up the idea of using the syringes, and on the morning of June 23, 2024, Barnard, Green, and another individual staked out Victim 1's residence.

As Victim 1 pulled into her driveway, Green exited the stolen truck and approached Victim 1, brandishing a firearm. Victim 1 drove through her security gate and began honking her horn to alert her neighbors and her daughter to call police. Victim 1's adult daughter ran outside of the residence to see what was happening, and Green pointed the gun at her head before running around the house and then returning to the stolen truck. The truck then drove away and was found abandoned later that day.

Law enforcement agents were able to locate Defendant, and they arrested him on July 1, 2024. During a post-*Miranda* interview, Defendant admitted that he had been hired by Villar and Bivins to recruit a group of people to kill Victim 1. Defendant stated that he was promised $250,000 and that he could determine how much each member of the group would be paid out of that sum. Defendant observed a video call between Pino and Bivins, where Pino promised a $50,000 bonus if the job was done without being traceable to Pino. Defendant stated that he was initially given $12,000 as a prepayment for the job.

Defendant stated that he recruited Green, Barnard, and another individual to commit the planned murder. Defendant informed law enforcement that he was provided with Victim 1's picture, address, and church schedule over his cellphone to assist the group in locating and following Victim 1. In subsequent statements, Defendant stated that he tasked Green with being the gunman on June 23 (after Defendant and the other individual had a disagreement).

On July 31, 2024, a grand jury in the Southern District of Florida returned a Superseding Indictment against Defendant and the other members of both groups, charging Defendant, Villar, Bivins, Green, and Barnard with Conspiracy to Commit Murder-for-Hire, in violation of 18 U.S.C. § 1958 (Count 1); murder-for-hire, in violation of 18 U.S.C. §§ 1958 and 2 (Count 13); stalking, in violation of 18 U.S.C. §§ 2261A(2)(a) and 2 (Count 14); possession of a firearm and ammunition by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 2 (Count 15); and Brandishing a Firearm in

furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 16). [ECF No. 53].

On April 4, 2025, Defendant filed the at-issue motion. [ECF No. 90]. He argues that: (1) murder-for-hire conspiracy and murder-for-hire are not crimes of violence that can serve as a predicate for 18 U.S.C. § 924(c) in Count 16; (2) stalking, in violation of 18 U.S.C. § 2261A(1) cannot serve as a predicate crime of violence offense to support a charge of 18 U.S.C. § 924(c) in Count 16; and (3) that 18 U.S.C. § 1952(a)(2) cannot be used as a crime of violence predicate to support the charge in Count 16, because Defendant was not substantively charged with any counts of 18 U.S.C. § 1952(a)(2).

## Applicable Law and Analysis

Defendant contends that the United States is proceeding only on *Pinkerton* liability, a doctrine which holds that a member of a conspiracy is liable for substantive crimes committed by co-conspirators during the course of the conspiracy, even if the member did not directly participate in or know about those specific crimes. *Pinkerton v. United States*, 328 U.S. 640 (1946).

Our appellate court follows the *Pinkerton* rule, which is the law in the Eleventh Circuit. "Each party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof." *United States v. Silvestri*, 409 F.3d 1311, 1335 (11th Cir. 2005)

(emphasis omitted) (internal quotation marks omitted). For liability to attach, the substantive offense must be a "reasonably foreseeable consequence of the conspiracy." *Id*. at 1336 (internal quotation marks omitted). *See also United States v. Shabazz*, 887 F.3d 1204, 1219 (11th Cir. 2018).

In addition to relying on a *Pinkerton* theory of co-conspirator criminal liability, the United States is also relying on the reality that Count 16 from the Superseding Indictment charges Defendant (and other Defendants) with aiding and abetting under 18 U.S.C. § 2.

Moreover, the United States notes, in its Response, that Johnson's statement that he tasked Green with possessing and using the firearm on June 23, 2024 generates legal grounds for the theory that Defendant was in joint possession of the firearm that day (as were all members of the conspiracy that day), even though Defendant did not *himself* possess or use the firearm. Defendant has not challenged this theory or the factual allegations supporting it.

### *"Crime of Violence" -- General Principles*

18 U.S.C. § 924(c)(1) authorizes enhanced punishments for individuals who use a firearm in connection with a "crime of violence or a drug trafficking crime."

A crime of violence is further defined as "an offense that is a felony" which "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of the

committing the offense." 18 U.S.C. § 924(c)(3).

Courts refer to Section 924(c)(3)(A) as "the elements clause" and Section 924(c)(3)(B) as "the residual clause." *United States v. Taylor*, 596 U.S. 845, 142 S. Ct. 2015, 2019 (2022).

In 2019, the Supreme Court held that Section 924(c)(3)(B)'s residual clause was unconstitutionally vague. *See United States v. Davis*, 588 U.S. 445, 139 S. Ct. 2319 (2019).

To "determine whether a federal felony may serve as a predicate for a conviction and sentence under the elements clause," courts are required to apply a "categorical approach." *Taylor,* 142 S. Ct. at 2020. When engaging in the categorical approach, courts look only to the statutory definitions – *i.e.,* the elements -- of the offense, and not to the particular underlying conduct. *Id*. In fact, the categorical approach precludes an inquiry into how any particular defendant may have committed a crime. *Id.* The only relevant question is whether the federal felony at issue requires the Government to prove as an element of the offense the use, attempted use, or threatened use of force. *Id.*

But if an offense includes alternative elements for conviction, then a "modified categorical approach" is to be used to determine which elements played a part in the defendant's conviction. *Descamps v. United States*, 570 U.S. 254, 260, 133 S. Ct. 2276 (2013). Under the modified approach, the court must consider the minimum conduct necessary for a conviction of the predicate offense and then consider whether such conduct amounts to a "crime of violence." If the "most innocent" or "minimum criminal" conduct does not

constitute a crime of violence, then the offense categorically fails to qualify as a crime of violence under 18 U.S.C. § 924(c). *Fernandez v. United States*, 569 F. Supp. 3d 169, 177 (S.D.NY 2021) (citing *United States v. Scott*, 990 F.3d 94 (2d Cir. 2021) (*en banc*) (holding that first-degree manslaughter under New York law is a crime of violence).

When evaluating whether a specific crime constitutes a crime of violence, the threshold inquiry is whether that statute is *divisible.* The answer to this question dictates how a court must analyze the statute. *See, e.g., Mathis v. United States*, 579 U.S. 500, 504–05, 513 (2016) (explaining the modified categorical approach applies when a statute's disjunctive phrasing renders the elements of a crime opaque).

When a statute sets out a single set of elements (*i.e.,* what the prosecution must prove beyond a reasonable doubt to sustain a conviction), the statute is **not** divisible and the *traditional* categorical approach applies. *See, e.g., Descamps,* 133 S. Ct. at 2282 ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, **indivisible** set of elements." (emphasis supplied)).

[Defendant  wants the Court to apply that indivisible approach.].

On the other hand, if the statutory language "sets out one or more elements of the offense in the alternative," then it is **divisible**. *Id.* at 2281.

Another indicator of a statute's divisibility is when that statute permits different maximum penalties, since "[i]f statutory alternatives carry different punishments, then

under *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)] they must be elements." *Mathis*, 579 U.S. at 518.

Thus, when a statute imposes different penalties based on the type of harm that resulted (such as serious bodily injury or death, as Section 2261A(2) does via Sections 2261(b)(1)–(5)), then that statute is *divisible.* If the statute is divisible, then the court applies the **modified** categorical approach, which means the court may look to a limited class of documents, such as the indictment or jury instructions, to determine what crime and with what elements a defendant was charged. *See*, *id.* at 505–06.

Applying the modified categorical approach, the analysis turns to the charged predicate offense and asks, "whether the statutory elements of the predicate offense necessarily require, at a minimum, the threatened or attempted use of force." *Brown*, 942 F.3d at 1075.

To qualify as a crime of violence, the requisite level of force under Florida law can be "nominal." *Johnson v. United States*, 559 U.S. 133, 138 (2010). Moreover, "*Johnson* thus does not require any particular degree of likelihood or probability that the force used **will** cause physical pain or injury, only **potentiality**." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (emphasis added).

### Murder for Hire

In his motion, Johnson says that "a charge for the inchoate crime of conspiracy (Count 1) and the substantive violation of **18 U.S.C. § 1958,** use of interstate commerce

facilities in the commission of murder for hire (Count 13), is not a 'crime of violence,' and thus, is not a predicate offense for an allegation for a violation of 18 U.S.C. § 924(c) (Count 16)." [ECF No. 90, p. 2 (emphasis supplied)]. He continues this theory by then arguing that "18 U.S.C. § 1958 does not have as an element of the offense the use, attempted use, or threatened use of physical force." *Id*. at 4 (emphasis supplied).

But this argument is misplaced, as **Count 16 never alleges 18 U.S.C. § 1958, murder-for-hire, as a predicate crime of violence**. [ECF No. 53, p. 13]. Instead, Count 16 alleges two predicate crimes of violence; violations of 18 U.S.C. §§ 1952(a)(2) and 2261A. *Id*. Because 18 U.S.C. § 1958 is not charged as a predicate crime of violence for Count 16, it is not necessary to consider Defendant's argument that it is not a crime of violence. The issue does not apply to Count 16 and is therefore irrelevant, so the Undersigned **respectfully recommends** that Judge Gayles **reject** Defendant's first ground for dismissal.

## The Federal Stalking Statute

The federal stalking statute, 18 U.S.C. § 2261A, criminalizes various forms of stalking. Subsection (2) sets forth two distinct ways it can be violated: (A) engaging in conduct that "places that person in reasonable fear of the death of or serious bodily injury to a person" (the "Fear of Death or Serious Injury Prong"); or (B) engaging in conduct which "causes, attempts to cause or would be reasonably expected to cause substantial emotional distress" (the "Emotional Distress Prong").

As set forth in the plain language of the stalking statute, a person violates the Fear of Death or Serious Injury Prong when he,

> with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, used the mail, any interactive computer service or electronic communications service or electronic communications system of interstate commerce, or any other facility in interstate or foreign commerce to engage in a course of conduct that places that person in reasonable fear of death or serious bodily injury to a person, a pet, a service animal, an emotional support animal, or a horse[.]

18 U.S.C. § 2261A(2)(A).

Because the elements above require a threat of physical force, it constitutes a "crime of violence," as defined by 18 U.S.C. § 924(c)(3)(A). *See, e.g., United States v. Griffin*, Case No. 17-CR-20639-TTGB-MKM, 2022 WL 2071054, at *6 (E.D. Mich. June 8, 2022) (denying defendant's motion to dismiss indictment where "interstate stalking resulting in death is a crime of violence"); *United States v. Bacon*, Case No. 18-75-LPS, 2021 WL 5051364, at *13 (D. Del. Nov. 1, 2021) (denying motion to dismiss Section 924(c) offense because cyberstalking, under Section 2261A(2)(A), "requires the victim to have 'reasonable fear' of death or serious bodily injury, which at minimum, demands "at least the threat of physical force," and thus constitutes a crime of violence); *see cf. Somers v. United States*, 66 F.4th 890, 894–96 (11th Cir. 2023) (after receiving the Florida Supreme Court's answer to the appellate court's certified questions, the court affirmed the district court's classification of the defendant as an armed career criminal where one of the predicate "violent felony" offenses was a conviction under Florida's aggravated assault

statute, which criminalizes an intentional threat to conduct imminent violence).

As we will outline below, the plain text of Section 2261A(2) demonstrates that it is divisible, which means that it may be analyzed under the "modified categorical approach." Moreover, a reasoned analysis of the case law cited in Defendant's motion reveals that those cases involved older, broader versions of the statute than the one charged in the present Superseding Indictment. Notably, there was a **significant change** between the previous and current versions of Section 2261A(1)(A): the addition of the requirement that the defendant engaged in conduct that caused the victim to fear death or bodily injury. For Section 924(c) purposes, that additional requirement is critical.

*Section 2261A(1) is Divisible and the Fear of Death or Serious Injury Prong Should Be*
*Analyzed Separately From the Emotional Distress Prong*

The wording of the statute alone makes plain that the conduct enumerated in Subsections (A) and (B) involve different elements. *See Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1358 (11th Cir. 2020) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself." (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*))).

The Fear of Death or Serious Injury Prong (Subsection (A)) charged in the Superseding Indictment criminalizes conduct that puts a person in "reasonable fear of the death of or serious bodily injury to" Victim 1 and her immediate family members. 18 U.S.C. § 2261A(2)(A). The Emotional Distress Prong (Subsection (B)) broadens the criminalized conduct to that which "causes, attempts to cause, or would be reasonably

expected to cause substantial emotional distress." *Id*. at § 2261A(2)(B).

These are alternative *elements,* rather than *means,* because they require different actions. Given that the subsections address different harms and protect different enumerated groups, it would be illogical to ask the jury to find either, but not agree on which one.

Congress restructured Section 2261A in 2013, adding a "conduct" requirement (which means travel or surveillance no longer sufficed alone) and splitting what some courts had previously treated as a single, indivisible offense into alternative elements. *Compare* Pub. L. 109-162, Title I, § 114(a), Jan. 5, 2006, 119 Stat. 298 (requiring that a criminal's "travel places [a victim] in reasonable fear of the death of, or serious bodily injury to, or causes substantial emotional distress . . . .") *with* Pub. L. 113-4, Title I, § 107(b), Mar. 7, 2013, 127 Stat. 77 (adding the requirement that a defendant "engages in conduct" placing a person in reasonable fear of the death of, or serious bodily injury to" a limited category of victims); *see United States v. Minners*, Case No. 05-CR-0152-CVE-02, 2020 WL 4275040, at *4 n.5 (E.D. Mich., July 24, 2020) (observing Congress had amended Section 2261A -- to make it "broader").

Additionally, the 2013 amendments distinguished between conduct that: (i) placed a person in reasonable fear of the death of or serious bodily injury to one of three categories of victims; (ii) caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to one of the same three categories of victims; and

(iii) cyberstalking that either (a) causes reasonable fear of death or serious bodily injury, or (b) caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress, to the same three types of victims. Pub. L. 113-4, Title I, § 107(b), Mar. 7, 2013, 127 Stat. 77.

In 2018, Congress *further* distinguished the Fear of Death and Serious Injury Prong (Subsection (2)(A)) from the Emotional Distress Prong (Subsection (2)(B)) when it expanded the list of protected groups of victims under Section 2261A's Subsections (1)(A) and (2)(A), *but specifically refused to do so* for Subsection (2)(B). *See* Pub. L. 115-334, Title XII, § 12502(a)(1), Dec. 20, 2018, 132 Stat. 4982 (adding that the Fear of Death or Serious Injury Prong criminalized conduct that put a person in reasonable fear of the death of or serious bodily injury to "(iv) the pet, service animal, emotional support animal, or horse of that person," but not amending the Emotional Distress Prong which protected "a person described in clause (i), (ii), or (iii) of subparagraph (A)").

In his motion, Defendant's argument that the statute is not divisible (and thus requires the traditional categorical approach) ignores Section 2261A's plain text and statutory history. [ECF No. 90, pp. 2–4]. In encouraging the Court to find that the Fear of Death and Serious Injury Prong does not constitute a crime of violence, the Defendant encourages the Court to adopt the reasoning of *Minners*, 2020 WL 4275040, at *1.

But *Minners* is an unpublished district court opinion that analyzed a *prior* version of the stalking statute. Moreover, other district courts analyzing more-recent versions of

the statute have **rejected** *Minners'* reasoning. *See, e.g., Griffin*, 2022 WL 2071054, at \*5 (rejecting *Minners'* reasoning, in part, because it analyzed a prior version of the statute, which allowed a conviction where an offender's interstate "travel places that person in reasonable fear"); *Bacon,* 2021 WL 5051364, at \*14 (rejecting *Minners'* "hypothesized scenario" where a defendant could be convicted of cyberstalking without the threatened use of physical force since "[i]f the hypothetical defendant intentionally communicates with the victim in a way that causes reasonable fear of death or serious bodily injury, that communication necessarily involves at least the threatened use of physical force").

The most-recent decision, *United States v. Abarca*, Case No. 22-cr-20505, 2024 WL 1643174 (S.D. Fla. Mar. 26, 2024), was a report and recommendation by Magistrate Judge Edwin Torres (and adopted by this Court) which found that Section 2261A(2) **is** divisible.

Defendant relies on *Minners* for the proposition that "the use of a dangerous weapon is just one means of committing interstate stalking and not an element of the generic offense of committing interstate stalking." [ECF No. 90, p. 4]. But *Minners* considered criminal conduct that occurred in 2005, and thus dealt with an *older* version of Section 2261A(1) that: (1) arguably criminalized a person's travel on its own; and (2) arguably listed what is now separated into elements, as means, because -- in a single clause -- it criminalized a defendant's "travel [which] places [the victim] in reasonable fear of the death of, or serious bodily injury to" certain persons. Pub. L. 106-386, Div. B, Title I, § 1107(b)(1), Oct. 28, 2000, 114 Stat. 1498.

16

When the *Minners* Court enumerated all the ways someone could violate the stalking statute without the use or threatened use of physical force, it was evaluating the version of the statute **in effect at that time**. That version, which was in effect from 2000 to 2006, could have conceivably criminalized the fear caused by a person's travel across state lines, on its own, without any additional conduct to buttress that fear. *See, id.*; Pub. L. 109-162, Title I, § 114(a), Jan. 5, 2006, 119 Stat. 2987.

Therefore, the prior statute's language "or as the result of, such travel or presence" left open the possibility of criminalizing reckless or passive behavior that caused fear. But the version of the stalking statute in effect in 2019 requires specific intent and intentional additional conduct. It is this specific intent, coupled with intentional additional conduct, that the Eleventh Circuit found to be hallmarks of a crime of violence.

In *Somers,* the Eleventh Circuit reasoned that a statute did not sweep in reckless acts (and therefore qualified as a crime of violence or violent felony) when the statute required "an intentional, unlawful threat by word or act to do violence to the person of another" coupled with the ability to do so and intentional conduct creating a "well-founded fear." 66 F.4th at 894–96.

In the instant case, the language of Section 2261A(1)(A) (in effect in 2019) clearly *excludes* unintentional or reckless conduct because it requires that a person not only travel, but **also** engage in intentional, volitional conduct, as well as cause a reasonable person to fear death or serious bodily injury to certain enumerated groups of people.

Separately, Sections 2261A(2) and 2261(b)(3), as charged in Count 14, allege statutory language increasing the maximum possible punishment for Defendant. [ECF No. 53, p. 12]. When a statute's subsections increase the maximum possible term of imprisonment (such as whether a defendant's conduct caused death, permanent disfigurement, or serious bodily injury), those constitute **elements**. *See Mathis v. United States*, 579 U.S. 500, 518 (2016) (stating when "statutory alternatives carry different punishments, then under *Apprendi* they must be elements"); *Apprendi*, 530 U.S. at 466 (holding that any fact increasing statutory maximum must be submitted to the jury and proved beyond a reasonable doubt).

The Superseding Indictment alleges that Defendants' conduct resulted in serious bodily injury and that they used a dangerous weapon during the offense, in violation of Section 2261(b)(3). The addition of these allegations raises Defendants' maximum possible punishment under Count 14 from five years to ten years, *see* Section 2261(b)(1)(5) ("A person who violates this section shall be imprisoned . . . for not more than 5 years, in any other case[.]").

Although a statute may be drafted to include illustrative examples, the fact that each "example" is coupled with a specific maximum term of incarceration leaves no doubt that they are elements. *See, e.g., Burrage v. United States*, 571 U.S. 204, 210 (2014) (noting that an enhancement increasing a defendant's minimum and maximum possible penalties "is an element that must be submitted to the jury"); *Griffin*, 2022 WL 2071054,

at *3 (analyzing Sections 2261A and 2261(b), in effect in 2016, and holding that "because the statute imposes different penalties based on whether or not 'death resulted,' [Section 2261A] is a 'divisible' statute").

Lastly, a "prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives. . . . And the jury, as instructions in the case will make clear, must then find that element, unanimously and beyond a reasonable doubt." *Descamps*, 570 U.S. 254 at 272. Were there any doubt about the nature of the Government's allegations, this Court is able to clarify them through its jury instructions.[2]

### Section 2261A(2)(A) is a Crime of Violence

Because the modified categorical approach applies, the Court may examine not only the elements of the offense, but other charging documents as well, including the

---

[2]     The United States acknowledges that Count 1 cites Section 2261A without distinguishing between subparagraphs. In substance, however, the Superseding Indictment alleges a violation of Section 2261A(2)(A) only (because it tracks the language of subparagraph (A) and never references the "substantial emotional distress" concept in subparagraph (B)). In that same vein, it is the United States' position that the Court should instruct the jury only on the elements of Subsection (A), and *not* (B). This scrivener's error does not render the Superseding Indictment defective, as it still clearly specifies the Defendants' charges. *See United States v. Sharpe*, 438 F.3d 1257, 1263 ("For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet."). *See also Bacon*, 2021 WL 5051364, at *12 (refusing to dismiss Section 924(c) count predicated on Section 2261A(2)(A) of the cyberstalking statute (fear of serious death and injury prong) where the indictment contained "a minor drafting error" alleging that the defendant had caused "substantial emotional distress," and the [G]overnment conceded that language should have been removed).

Superseding Indictment and (forthcoming) jury instructions. The elements of the offense (as alleged in the Superseding Indictment) are that Defendants: (1) "used a facility in interstate or foreign commerce"; (2) "with the intent to kill, injure, harass, and intimidate, and place under surveillance"; and (3) "engaged in a course of conduct that places another person in reasonable fear of death or serious bodily injury." *See* 18 U.S.C. § 2261A(2)(A).

The statute (through an array of cross references) defines "serious bodily injury" as: "bodily injury which involves—(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. § 1365(h)(3).

The statute and Superseding Indictment require the Government to prove Defendant "engaged in conduct" that placed Victim 1 in reasonable fear of death and serious bodily injury to Victim 1 and another person, and that Defendant and the co-defendants used a dangerous weapon during the offense. To qualify as a crime of violence under Section 924(c)(3)(A), the charged crime must require only a "nominal" use of force -- whether in a completed action, an attempt, or a threat -- and use of force need only have the potential to cause physical pain or injury. *Stokeling v. United States*, 139 S. Ct. 544, 549 (2019).

The statute's language (in effect in 2019) criminalizes a defendant's conduct only when a defendant, using a facility in interstate or foreign commerce and acting with the

requisite intent, "engages in conduct" placing a victim in "reasonable fear of death and serious bodily injury." This critical element transforms Section 2261A(2)(A) into a statute that criminalizes threats of violence. A course of conduct causing a victim to reasonably fear death or serious bodily injury is, in common parlance, a threat. *Cf. In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016) (holding that bank robbery by intimidation is a crime of violence under Section 924(c)(3)(A) because that element requires a threat).

While the Eleventh Circuit has not yet addressed the Death or Serious Injury Prong of the stalking statute, it recently held, in a published opinion, that a similar statute, Florida's aggravated assault statute (Fla. Stat. § 784.021), qualified as a "violent felony" within the analogous elements clause of the Armed Career Criminal Act ("ACCA"). *See Somers*, 66 F.4th at 894–96 (affirming district court's sentence). Florida assault requires "an intentional, unlawful threat by word or act to do violence to . . . another," along with "doing some act which creates a well-founded fear in such other person that such violence is imminent." *See* Fla. Stat. § 784.011.

In *Somers*, the Eleventh Circuit confirmed that aggravated assault, in violation of Fla. Stat. § 784.021, falls within ACCA's analogous elements clause because it requires an intentional threat of physical force against the victim. 66 F.4th 894-96. In so holding, the Eleventh Circuit found that "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent,"

meets the definition of a "violent felony" or "crime of violence," in that it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 894.

Section 2261A(2)(A) bears significant similarities to that statute. Like assault, it demands a high degree of specific intent (the "intent to kill, injure, harass, [and] intimidate") and pairs that with conduct that places the victim in reasonable fear of death or serious bodily injury. A statute that demands an intentional act causing a victim to fear death or serious injury was deemed a crime of violence in *Somers*, and the Undersigned sees no reason why the same result would not apply here.

It is impossible to conceptualize an instance where an individual engages in a "course of conduct" that puts someone in "reasonable fear of the death of or serious bodily injury" without engaging in conduct that, at minimum, threatens the use of physical force to a person.

Defendant cites an array of cases, in addition to *Minners* (which we have already distinguished), in an attempt to argue that interstate stalking can be completed without physical force, and therefore cannot be a crime of violence, such as the holdings in *United States v. Willis*, 346 F.3d 475 (4th Cir. 2003), *United States v. Veal*, 138 F. App'x 902, 903–04 (9th Cir. 2005), and *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014). But *Willis* and *Veal* involved broader versions of the statute that did not include the amendments which demonstrate that Section 2261A(1) is divisible and a crime of violence. *Sayer* involved the

22

emotional distress prong as sufficient to establish the crime of stalking.

In the *Abarca* Report and Recommendation, which this Court adopted, Magistrate Judge Torres found that Section 2261A(2)(A) was a predicate crime of violence for a violation of 18 U.S.C. § 924(c)(1)(A) in counts that were structured similarly to Count 16 of the instant superseding indictment. 2024 WL 1643174, at 15–22. The *Abarca* Court used the modified categorical approach and found that Section 2261A(2)(A) required the use, attempted use, or the threat of force as an element of the crime.

Count 16 of the Superseding Indictment, Section 2261A(2)(A) is charged as similarly as in the count from *Abarca.* Given that Section 924(c)(3) defines a crime of violence as any felony requiring "the threatened use of physical force against the person or property of another," a statute like Section 2261A(2)(A) (criminalizing, at minimum, intentional threats) fits comfortably as a Section 924(c) predicate. Therefore, Defendant's second argument is unpersuasive and should be **denied**.

*Defendant Does Not Need to Be Charged or Convicted of a Predicate Offense*
*to Sustain a Conviction of Section 924(c)(1)(A)*

Defendant's final argument is that the other crime of violence predicate, 18 U.S.C. § 1952(a)(2), cannot be used because he was not charged with that crime in any separate counts. [ECF No. 90, p. 10]. Defendant does not cite any law to support his argument.

The lack of legal authority is telling, as a conviction under Section 924(c) does not require that Defendant be convicted of, or even charged with, the predicate crime of violence or drug trafficking crime. *United States v. Frye,* 402 F.3d 1123, 1127 (11th Cir. 2005)

(deciding issue as one of first impression in the Eleventh Circuit). *See also Navarro v. United States,* 679 F. App'x 973 (11th Cir. 2017) (holding that a Section 924(c) conviction "does not require that the defendant be convicted of or even charged with the predicate offense" and explaining that a conviction "requires only that the predicate crime be one that *may* be prosecuted" (emphasis added)). *Cf. United States v. Kinchen,* 2018 WL 11422081, *2 (11th Cir. 2018) (Section 924(c) conviction requires only "that the predicate offense is one the [G]overnment *could* have prosecuted, meaning a showing that the defendant used or carried a firearm during and in relation to a crime of violence or a drug trafficking crime" (emphasis added)). Defendant's third argument is therefore thoroughly unconvincing and his motion should be denied on this ground, as well.

For the reasons outlined above, the Undersigned **respectfully recommends** that Judge Gayles **deny** the motion to dismiss Count 16.

## Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with Judge Gayles. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, on May 7, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Darrin P. Gayles
All Counsel of Record

25